IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT KNOXVILLE
Assigned on Briefs March 19, 2003

## STATE OF TENNESSEE v. GEORGE C. PEERY, III

**Direct Appeal from the Criminal Court of Sullivan County
No. S45,062    R. Jerry Beck, Judge**

---

**No. E2002-01682-CCA-R3-CD
June 13, 2003**

---

Defendant, George C. Peery, III, appeals his sentence of split confinement imposed upon his plea of guilt to aggravated burglary, a Class C felony, and theft under $500, a Class A misdemeanor. In his appeal, Defendant requests full probation and challenges the imposition of a one-year period of confinement followed by two years probation in the community corrections program for his felony conviction. Defendant does not challenge his misdemeanor sentence. We affirm the trial court's denial of full probation but reverse the one-year period of confinement and remand for modification of the judgment to reflect a period of confinement of 10.8 months to be served in the local jail or workhouse. In addition, because there is a conflict between the transcript and the judgment, we remand this case for correction of the judgment.

**Tenn. R. App. P. 3 Appeal as of Right;
Judgment of the Criminal Court Affirmed in Part and Modified in Part**

THOMAS T. WOODALL, J., delivered the opinion of the court, in which DAVID G. HAYES and JOHN EVERETT WILLIAMS, JJ., joined.

Stephen M. Wallace, District Public Defender; and Joseph F. Harrison, Assistant Public Defender, Blountville, Tennessee, for the appellant, George C. Peery, III.

Paul G. Summers, Attorney General and Reporter; Peter M. Coughlan, Assistant Attorney General; H. Greeley Wells, Jr., District Attorney General; and Joseph Eugene Perrin, Assistant District Attorney General, for the appellee, State of Tennessee.

### OPINION

On October 4, 2000, Jeff Peters told the Bristol Police Department that his residence had been burglarized. Several pieces of personal property were stolen including two reciprocating saws. Mr. Peters said there was no sign of a forced entry and surmised that the intruders had used a spare key which was hidden under a sprinkler in the yard. A short while later, Detective Charlie Thomas interviewed Defendant in connection with the burglary. During the interview, Defendant confessed

his involvement because he wanted to "straighten things out." According to Defendant, he drove Keith Bowman, the boyfriend of Mr. Peters' daughter, to the Peters' residence knowing that Mr. Bowman intended to "rob" the household. Defendant watched as Mr. Bowman exited the house carrying a box of stolen items including the saws. Defendant then drove Mr. Bowman to Bluff City so that Mr. Bowman could sell the saws to his uncle, Mark White. Although Defendant was not present when the sale was made, he expected to receive some of the proceeds for his role in the offense. Mr. Bowman, however, never paid Defendant his share of the sales proceeds.

Based on the information provided by Defendant, Mr. Peters' reciprocating saws were recovered from Mr. White. Mr. White's statement was partially consistent with Defendant's except that Mr. White said that the sale of the saws took place at his job site in Bristol.

On April 11, 2001, Defendant was indicted on one count of aggravated burglary, a Class C felony, and one count of theft of property under $500.00, a Class A misdemeanor. On February 21, 2002, Defendant pled guilty to both charges. As recommended by the plea agreement, Defendant received a three-year sentence as a Range I standard offender for the Class C felony conviction and an eleven month, twenty-nine day sentence for the misdemeanor charge, with the sentences to be served concurrently for an effective sentence of three years.

The trial court held a sentencing hearing on June 28, 2002 to determine the manner of service of the sentence. During his testimony, Defendant said that he was twenty-two years old, and lived in Bristol with his wife and baby daughter. Defendant's wife did not work outside the home, and Defendant was the family's sole support. Defendant currently worked for his father in his automobile repair and landscaping company receiving approximately $200.00 per week in pay. Although Defendant had dropped out of high school in the tenth grade, he had completed his G.E.D. in 1997 and intended to enroll in Northeast State Technical Community College as soon as he was able to secure financing. Defendant admitted he had used alcohol and marijuana in the past. However, Defendant said that his last drink of alcohol was on New Year's Eve, 2001, and he had not used marijuana in about a year.

During his interview with the Bristol Police Department, Defendant freely confessed and agreed to testify against Mr. Bowman. Defendant accepted responsibility for his actions and expressed remorse for the offense.

Defendant testified that he had charges pending in the Kingsport General Sessions Court for driving on a suspended license, possession of a suspended license, violation of the light law and violation of the registration laws. Although the pre-sentence report showed that he had additional charges pending in the Bristol General Sessions Court for theft of property under $500.00, and possession of marijuana and drug paraphernalia, the general sessions court was unable to find a warrant when Defendant inquired about the charges.

In response to the trial court's inquiries, Defendant said that the assault charge referenced in his juvenile record had been dismissed. However, Defendant admitted he had been committed to

the custody of the Department of Children's Services in 1997 as a result of his other juvenile offenses and spent nine months in the Taft Youth Center. On cross-examination, Defendant revealed that his other juvenile offenses included convictions for possession of a loaded weapon, shoplifting, automobile burglary and theft, destruction of property, contributing to the delinquency of a minor, various traffic and driving related convictions and two convictions for "grand larceny." Defendant explained that the girl involved in his contributing to the delinquency of a minor conviction was now his wife, and the offense occurred when the two of them ran away together. Defendant said that he had not spent any time in confinement as a result of his convictions except for his time at the Taft Youth Center.

Defendant's father, Mr. George Peery, Jr., verified Defendant's employment with his company and agreed to supervise Defendant during any probation the trial court might grant. Mr. Peery admitted that Defendant had encountered problems in the past but was doing much better at the time of the sentencing hearing.

In determining whether a period of confinement was appropriate, the trial court's primary concern was the number of convictions Defendant had received over a relatively short period of time while a juvenile. The trial court also noted that it believed that most of Defendant's juvenile delinquent acts would have constituted felony crimes if Defendant had committed the offenses as an adult. The trial court observed that the opportunities for rehabilitation extended by the juvenile court system apparently had little effect on Defendant's conduct, and Defendant had not spent one day in confinement other than the restrictions encountered at the Taft Youth Center. However, because of his youthful appearance, the trial court was reluctant to place Defendant in the Tennessee Department of Correction. Moreover, the trial court accredited Mr. Peery's testimony to a certain extent that his son's behavior had improved over recent months. Based on these factors, the trial court denied Defendant full probation and imposed a one-year period of incarceration as part of Defendant's split-confinement sentence.

Defendant now appeals his sentence arguing first that the trial court erred in not granting him full probation. Secondly, if split confinement is appropriate, Defendant argues that the trial court erred in sentencing Defendant to a period of confinement in excess of the release eligibility date applicable to Defendant's sentence for his felony conviction.

## A. Standard of Review

When a defendant challenges the length or the manner of service of his or her sentence, this Court must conduct a *de novo* review with a presumption that the determinations made by the trial court are correct. Tenn. Code Ann. § 40-35-401(d); *State v. Imfeld*, 70 S.W.3d 698, 704 (Tenn. 2002). This presumption, however, is contingent upon an affirmative showing in the record that the trial court considered the sentencing principles and all relevant facts and circumstances. *State v. Pettus*, 986 S.W.2d 540, 543-44 (Tenn. 1999). If the record fails to show such consideration, the review of the sentence is purely *de novo*. *State v. Shelton*, 854 S.W.2d 116, 123 (Tenn. Crim. App. 1992).

In making its sentencing determinations the trial court must consider: (1) the evidence presented at the trial and sentencing hearing; (2) the pre-sentence report; (3) the principles of sentencing and arguments as to sentencing alternatives; (4) the nature and characteristics of the criminal conduct; (5) any appropriate enhancement and mitigating factors; (6) the defendant's potential or lack of potential for rehabilitation or treatment; and (7) any statements made by Defendant in his own behalf. Tenn. Code Ann. §§ 40-35-103 and -210; *State v. Williams*, 920 S.W.2d 247, 258 (Tenn. Crim. App. 1995). If the trial court has imposed a lawful sentence by following the statutory sentencing procedure, given due consideration and proper weight to the factors and sentencing principles, and made findings of fact adequately supported by the record, this Court may not modify the sentence even if it would have preferred a different result. *State v. Fletcher*, 805 S.W.2d 785, 789 (Tenn. Crim. App. 1991). The defendant bears the burden of showing that his sentence is improper. Tenn. Code Ann. § 40-35-401(d) Sentencing Commission Comments; *State v. Ashby*, 823 S.W.2d 166, 169 (Tenn. 1991).

Because Defendant does not fall within the class of offenders for whom incarceration is a priority and is a standard offender convicted of a Class C felony, Defendant is presumed to be an eligible candidate for alternative sentencing. Tenn. Code Ann. §§ 40-35-102(5) and (6). Moreover, Defendant, whose imposed sentence is less than eight years, is eligible to serve his alternative sentence on full probation. *Id.* -303(a). The trial court extended the presumption of alternative sentencing to Defendant but sentenced him to split confinement instead of probation. *See* Tenn. Code Ann. § 40-35-306. Defendant was ordered to serve one year in the local jail with the balance of his three-year sentence served on supervised probation with participation in the community corrections program as a condition of probation. *See* Tenn. Code Ann. § 40-36-106(f).

Defendant argues that the trial court erred in not granting him full probation. Although eligible, a defendant is not automatically entitled to full probation and bears the burden of establishing that full probation will be in the best interests of the defendant and the public. Tenn. Code Ann. § 40-35-303(b) (1997) (Sentencing Commission Comments); *State v. Hartley*, 818 S.W.2d 370, 373 (Tenn. Crim. App. 1991); *State v. Bingham*, 910 S.W.2d 448, 456 (Tenn. Crim. App. 1995), *overruled in part, State v. Hooper*, 29 S.W.3d 1, 9 (Tenn. 2000). In determining whether to grant or deny full probation, the trial court may consider the circumstances of the offense, the defendant's potential or lack of potential for rehabilitation, whether full probation will unduly depreciate the seriousness of the offense, and whether a sentence other than full probation would provide an effective deterrent to others likely to commit similar crimes. Tenn. Code Ann. §§ 40-35-210(b)(4), 40-35-103(5), 40-35-103(1)(B); *Bingham*, 910 S.W.2d at 456.

In determining if incarceration is appropriate, a trial court may consider the need to protect society by restraining a defendant having a long history of criminal conduct, the need to avoid depreciating the seriousness of the offense, whether confinement is particularly appropriate to effectively deter others likely to commit similar offenses, and whether less restrictive measures have often or recently been unsuccessfully applied to the defendant. Tenn. Code Ann. § 40-35-103(1); *see also Ashby*, 823 S.W.2d at 169.

There is no mathematical equation to be utilized in determining sentencing alternatives. Not only should the sentence fit the offense, but it should fit the offender as well. Tenn. Code Ann. § 40-35-103(2); *State v. Batey*, 35 S.W.3d 585, 588-89 (Tenn. Crim. App. 2000). Indeed, individualized punishment is the essence of alternative sentencing. *State v. Dowdy*, 894 S.W.2d 301, 305 (Tenn. Crim. App. 1994). Sentencing must be determined on a case-by-case basis, tailoring each sentence to that particular defendant based upon the facts of that case and the circumstances of that defendant. *State v. Moss*, 727 S.W.2d 229, 235 (Tenn. 1986).

## B. Full Probation

The trial court concluded that a period of confinement was appropriate because of Defendant's extensive juvenile record consisting of two convictions for "grand larceny" and convictions for possession of a loaded weapon, shoplifting, automobile burglary and theft, destruction of property, contributing to the delinquency of a minor, and various traffic and driving related convictions. Defendant, on the other hand, argues that incarceration was inappropriate because his record as an adult is sparse and does not indicate that measures less drastic than confinement have been applied unsuccessfully. Based on this argument, Defendant feels that his juvenile record should be disregarded in the determination of the manner in which his sentence should be served. Although admittedly Defendant's adult criminal record is not as long as the record he amassed as a juvenile, Defendant had just turned twenty-one when he committed the present offenses. This Court has previously determined that a defendant's "juvenile record of criminal conduct may properly be considered in assessing a suitable sentence upon a felony conviction by an adult." *State v. Stockton*, 733 S.W.2d 111 (Tenn. Crim. App. 1986); Tenn. Code Ann. § 37-1-133. Defendant's extensive juvenile record supports the trial court's finding that Defendant has a long history of criminal conduct. Tenn. Code Ann. § 40-35-103(1)(A).

Moreover, although not discussed by the trial court, Defendant's inability to abide by the probationary terms extended by the juvenile courts clearly supports a conclusion that measures less restrictive than confinement have recently and frequently been unsuccessful. Tenn. Code Ann. § 40-35-103(1)(C). Beginning in March, 1997, shortly before he turned seventeen, Defendant was convicted of reckless driving and placed in the custody of the Tennessee Department of Children's Services. Four days later he was charged with curfew violation. In April, 1997, he was convicted again of reckless driving followed by convictions for destruction of property and "grand larceny" on May 26, 1977. Defendant was also charged with two counts of aggravated assault but testified at the sentencing hearing that these charges were later dismissed. As a result of the May 26 convictions, Defendant was sentenced to six months, the sentence was suspended, and Defendant was placed on probation. However, two days later, on May 28, 1997, Defendant was arrested and later convicted of burglary of an automobile and theft. On May 29, 1997, Defendant was again arrested for "grand larceny" followed by arrests for shoplifting on June 5, 1997, and possession of a loaded weapon on June 8, 1997. He was convicted of all three offenses and again placed on probation. Defendant testified that he also used illegal drugs during this time.

The trial court also considered the applicability of enhancement factor (20) in determining the manner of service of Defendant's sentence and concluded that Defendant had committed offenses as a juvenile which would constitute felonies if committed as an adult. Tenn. Code Ann. § 40-35-114(20). Based on the limited information contained in the pre-sentence report, however, only Defendant's conviction for burglary of an automobile would qualify as a felony if Defendant had committed the offense as an adult. *See* Tenn. Code Ann. §§ 39-14-402(a)(4) and (d). The acts which led to "grand larceny" charges occurred *after* 1989, and therefore should have been designated as "theft" offenses. *See* Tenn. Code Ann. § 39-14-101. We would have to assume from this record that the two thefts were felonies involving property greater than $500.00 in value when they were designated as "grand larcenies"; we are unable to do so, however, because "grand" versus "petit" larceny depended on a value greater than $200.00 under prior law. *See* Tenn. Code Ann. § 39-3-1103 (repealed 1989). In addition, whether or not Defendant's convictions for shoplifting and destruction of property would constitute felonies depends on the value of the property stolen or destroyed, and the record does not reveal that information. *See* Tenn. Code Ann. §§ 39-14-103, -105, -146 and -408.

Nonetheless, the record amply supports the trial court's sentence of a period of confinement. Defendant's numerous convictions as a juvenile, which include at least one offense that would constitute a felony, and the repeated but unsuccessful periods of probation extended to Defendant without any noticeable rehabilitative effect, support the trial court's conclusion that some period of confinement is necessary. Based upon our review, we conclude that Defendant has failed to demonstrate that he is entitled to full probation.

## C. Split Confinement

Defendant argues, and the State concedes, that the trial court's imposition of a sentence of confinement in excess of the time required for Defendant to reach his eligibility date of release was improper. We agree. This Court has previously determined that the period of confinement which a defendant is ordered to serve in a split confinement cannot exceed the defendant's release eligibility date. *Thornton v. State*, No. E2003-00393-CCA-R8-PC, 2003 WL 1233478 (Tenn. Crim. App., Knoxville, March 17, 2003); *State v. Hudson,* No. E2001-00377-CCA-R3-CD, 2002 WL 264625 (Tenn. Crim. App., Knoxville, February 19, 2002), *perm. to appeal denied* (Tenn. 2002); *State v. Bradshaw*, No. 01C01-9810-CR-00439, 1999 WL 737871 (Tenn. Crim. App., Knoxville, Sept. 22, 1999).

A Range I standard offender is eligible for release after serving thirty percent of his or her sentence. Tenn. Code Ann. § 40-35-501(c). The sentencing range for a Class C felony is three to six years. Tenn. Code Ann. § 40-35-112(a)(3). With a three-year minimum sentence, Defendant will be eligible for release after 10.8 months. Therefore, we remand this case for entry of an amended judgment reflecting a sentence of split confinement with 10.8 months to be served in the local jail or workhouse concurrently with the misdemeanor sentence and the balance served on probation with participation in the community corrections program as a condition of probation.

**D. Correction of Judgment**

At the sentencing hearing, the trial court stated that it intended to sentence Defendant to split confinement with the period of confinement to be served in the Sullivan County Jail. The judgment form, on the other hand, reflects that Defendant is sentenced to the Department of Correction for three years. Although the "special conditions" section of the judgment says that Defendant will serve one year in jail, the judgment form shows that Defendant is to serve his sentence in the community corrections program.

The judgment is not clear, therefore, whether Defendant was placed on probation as part of his split confinement or placed in the community corrections program, but the distinction between the two forms of alternative sentencing is significant. A defendant who is permitted to participate in the community corrections program is actually serving his sentence while in the program in lieu of incarceration. Tenn. Code Ann.§ 40-36-106(e)(1). Conversely, a defendant's sentence is suspended while he is on probation. Tenn. Code Ann. § 40-35-303(c). In the event of revocation, a defendant on probation receives no credit for time served, but a participant in the community corrections program does. *Compare* Tenn. Code Ann. § 40-35-310 *with* Tenn. Code Ann. § 40-36-106(e)(3)(B). After a probation is revoked, the defendant's original sentence is executed. Tenn. Code Ann. § 40-35-310. If a defendant is removed from a community corrections program, the trial court may resentence the defendant for a period of incarceration up to the maximum sentence provided for the offense less credit for the time spent in the program. Tenn. Code Ann. § 40-36-106(e)(4); *see State v. Crook*, 2 S.W.3d 238, 240 (Tenn. Crim. App. 1998).

When there is a conflict between the transcript of evidence and the judgment, the transcript controls. *State v. Moore*, 814 S.W.2d 381, 383 (Tenn. Crim. App. 1991). The transcript of the sentencing hearing shows that the trial court intended to sentence Defendant to split confinement pursuant to Tennessee Code Annotated section 40-35-306 with participation in the community corrections program a condition of probation. Accordingly, we remand this case to the trial court for correction of the judgment to reflect the actual sentence imposed as set forth in the transcript. Tenn. R. Crim. P. 36.

## CONCLUSION

For the foregoing reasons, we affirm the trial court's judgment regarding the appropriateness of split confinement but remand the case for entry of an amended judgment reflecting a period of confinement of 10.8 months and to correctly state the sentence imposed as set forth in this opinion.

_____
THOMAS T. WOODALL, JUDGE